IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHARLES H. SCHMIDT, KRISTOPHER C.
GOAD, GREYSON GOODENOW AKA
VANNA GOODENOW, JIMMIE LEE
JARVIS, ALICE MINIUM, AND
THERESSA N. WELLER AKA EILIS
WELLER, ANDREW RINGLE, EDUARDO
ACEVEDO,

    Plaintiffs,

v.                              Case No. 3:22-cv-404

CITY OF RICHMOND, WILLIAM C.
SMITH, IN HIS INDIVIDUAL CAPACITY,
WILLIAM BLACKWELL, IN HIS
INDIVIDUAL CAPACITY, GERALD M.
SMITH, IN HIS INDIVIDUAL CAPACITY,
JOHN BRIDGES, IN HIS INDIVIDUAL
CAPACITY, THOMAS W. LLOYD, IN HIS
INDIVIDUAL CAPACITY, JAKOB A.
TORRES, IN HIS INDIVIDUAL
CAPACITY, BRENDA RUIZ-OYLER, IN
HER INDIVIDUAL CAPACITY,
BENJAMIN J. FRAZER, IN HIS
INDIVIDUAL CAPACITY, APRIL M.
DIXON, IN HER INDIVIDUAL
CAPACITY, PATRICK DIGIROLAMO, IN
HIS INDIVIDUAL CAPACITY, PAUL D.
CAMPBELL, IN HIS INDIVIDUAL
CAPACITY, JUNIUS THORPE, IN HIS
INDIVIDUAL CAPACITY, NICO YOUNG,
IN HIS INDIVIDUAL CAPACITY, JOHN
BEASLEY, IN HIS INDIVIDUAL
CAPACITY, CHRISTOPHER GLEASON,
IN HIS INDIVIDUAL CAPACITY, FRANK
SCARPA, IN HIS INDIVIDUAL

CAPACITY, KATE LEONE, IN HER
INDIVIDUAL CAPACITY, DUANE
PEPPEL, IN HIS INDIVIDUAL CAPACITY,
KHALID HARRIS, IN HIS INDIVIDUAL
CAPACITY, BEN MALONE, IN HIS
INDIVIDUAL CAPACITY, TYLER CRAIG,
IN HIS INDIVIDUAL CAPACITY,
KEEGAN MILLS, IN HIS INDIVIDUAL
CAPACITY, DARIO BURALIEV, IN HIS
INDIVIDUAL CAPACITY, BENJAMIN
O'ROURKE, IN HIS INDIVIDUAL
CAPACITY, DOMINIC COLOMBO, IN HIS
INDIVIDUAL CAPACITY, DAN BONDY,
IN HIS INDIVIDUAL CAPACITY,  JASON
KUTI, IN HIS INDIVIDUAL CAPACITY,
STEVE RAWLINGS, IN HIS INDIVIDUAL
CAPACITY, OFFICER DOES 1-50, IN
THEIR INDIVIDUAL CAPACITIES,

Defendants.

## BRIEF IN SUPPORT OF JOINT MOTION TO SEVER

### I.     INTRODUCTION

Federal Rule of Civil Procedure 21 permits the severance of any claim when doing so benefits the efficient disposition of litigation without prejudicing a party.  Here, Plaintiffs' claims focus on the entirely separate conduct of each defendant.  The 350-paragraph Complaint sets forth 23 distinct instances of alleged "unlawful activity" ranging from verbal comments by police officers to arrests and the use of tear gas and pepper spray at different locations across the City between May 2020 and June 2021, involving eight different Plaintiffs, three different police chiefs, 25 different police officers, and 50 unidentified Richmond Police Department officers (not to mention the unknown Henrico and Virginia State police officers referenced in the Complaint). Plaintiffs are not entitled to joint relief.  Plaintiffs' claims do not all arise out of the same transactions or occurrences.  There is no common set of facts or questions of law germane to all

2

Plaintiffs.   Each situation presented in the Complaint is unique to each Plaintiff and each Defendant.   Accordingly, Plaintiffs do not satisfy the requirements for permissive joinder under Fed. R. Civ. P. 20, and the claims presented should be severed pursuant to Fed. R. Civ. P. 21. Severing the claims will provide clarity, fairness, and the efficient administration of justice to all parties.

## II.   BACKGROUND

Plaintiffs each attempt to assert discrete claims arising from separate events on isolated dates that involve different officers.  Not a single set of facts presented by each Plaintiff overlaps with one another.

### A.   Plaintiff Charles Schmidt's allegedly unlawful arrest on June 26, 2020

Plaintiff Charles H. Schmidt, Jr.'s claims concern an alleged unlawful arrest on June 26, 2020.  [ECF No. 1 at ¶¶ 55-98].  Schmidt allegedly learned about Richmond Police Department's use of tear gas at Marcus-David Peters Circle ("MDP Circle") and drove there to observe in his purported role as a "trained legal observer" and volunteer for the American Civil Liberties Union. *Id.* at ¶¶ 56-64.  Finding no action at MDP, Schmidt drove to a Whole Foods parking lot on Broad Street where he located 45 to 50 police officers.  *Id.* at ¶ 68.  Schmidt was told he was trespassing and ultimately detained by Officer Benjamin Frazer when Schmidt failed to leave as requested. *Id.* at ¶¶69-80.  Schmidt asserted his hands were zip-tied by other unknown officers while Officer Frazer completed paperwork.  *Id.* at ¶¶ 82-84.  Officer Frazer cited Schmidt for trespass in violation of Va. Code § 18.2-119 and released Schmidt with a summons.  *Id.* at ¶¶ 87-90.

Schmidt's June 26, 2020 interaction with the Richmond Police Department occurred pror to Defendant Gerald M. Smith's appointment as Chief of Police.[1]  *Id.* at ¶¶ 55-98.

**B.**   **Plaintiff Kristopher C. Goad's allegedly unlawful arrest on July 26, 2020 and September 28, 2020**

Plaintiff Kristopher C. Goad asserts that he was unlawfully arrested on July 26, 2020 and September 28, 2020.  *Id.* at ¶¶ 132-152.  Neither event involved the same circumstances or the same officers.

**1.**   **July 26, 2020**

The July 26, 2020 arrest was allegedly made by Officer Jakob Torres at or near the Sacred Heart Cathedral where Goad was purportedly monitoring and video recording Richmond Police Department activity.  *Id.* at ¶¶ 132-143.  Goad claims that Officer Torres arrested him without warning after he was "lead" by Officer Patrick Digirolamo.  *Id.* at ¶ 137.  Goad was charged with trespassing in violation of Va. Code § 18.2-119 and released after being held for three hours when a magistrate found no probable cause for the arrest.  *Id.* at ¶¶ 138-140.  "A few days later," Goad claims he was "detained" by Sgt. John Bridges "to issue a citation from Torres' criminal complaint."  *Id.* at ¶ 143.

**2.**   **September 28, 2020**

On September 28, 2020, Goad claims he was at MDP Circle were he was "arrested without warning by Richmond Police Officers April Dixon and Nico Young" in connection with events that occurred on September 14, 2020 when Goad was "documenting a march of peaceful protestors."  *Id.* at ¶¶ 144-46.  The criminal complaint was sworn by Lt. Thomas Lloyd.  *Id.* at ¶

---

[1] Gerald M. Smith was appointed Chief of Police by Richmond Mayor Lavar Stoney on June 27, 2020 and assumed the position on July 1, 2020. https://www.wavy.com/news/deputy-chief-gerald-smith-appointed-new-of-richmond-police-2/

148.  Goad was charged with obstructing the free passage of others in violation of Va. Code § 18.2-404.  *Id.* at ¶ 147.  Goad alleges nearly a year later that Officer Dixon directed social media comments at Goad to "taunt" him.  *Id.* at ¶¶ 150-152.

C.    **Vanna Goodenow's allegedly unlawful arrest on October 27, 2020**

Plaintiff Vanna Goodenow claims to have been unlawfully arrested by Officer Junius Thorpe on October 27, 2020.  *Id.* at ¶¶ 266-78.  Goodenow "approached the scene" of RPD officers who stopped a vehicle and pulled suspects out of the vehicle, and Goodenow started filming.  *Id.* at ¶ 269-70.  Goodenow was "ordered" by an unknown officer to leave the scene and told by another unknown officer that there was no need to record because body-worn cameras were recording.  *Id.* at ¶ 270.  Goodenow refused to leave and was arrested by Officer Thorpe for violating Va. Code § 18.2-460(B).

D.    **Jimmie Lee Jarvis's 14 alleged encounters with police between May 31, 2020 and November 12, 2020**

1.    **May 31, 2020 to June 1, 2020 – Jarvis's allegations against unknown police officers**

On June 1, 2020, after 1:50 a.m., Jimmie Lee Jarvis was standing on Broad Street after following behind protestors through the Fan and Museum District, when unknown Richmond Police officers allegedly "began firing less lethal ammunition and tear gas canisters at him with no warning."  *Id.* at ¶¶ 154, 157, 158.  After he took time to recover, he drove some injured college students home, then returned to the Museum District "to survey damage."  *Id.* ¶ 159.

2.    **June 14-15, 2020 – Jarvis's allegations against unknown police officers**

On June 14, 2020 at 10:37 p.m., Jarvis was standing with a group of protestors across from Richmond Police headquarters when unknown Richmond Police officers allegedly began spraying pepper spray into the air.  *Id.* ¶ 162.  Later into the early morning hours of June 15, Richmond

Police officers allegedly pointed tear gas launchers directly at Jarvis while he was filming them. *Id.* at ¶ 166.  "Jarvis remained filming until about 2:30 a.m."  *Id.* at ¶ 168.

### 3.   June 15, 2020 – Jarvis's allegations against unknown officers

On June 15, 2020, Jarvis was present at another protest at Richmond Police Headquarters, this time accompanied by his sister.  *Id.* ¶ 169.  At approximately 10:15 p.m., an unidentified Richmond Police officer allegedly sprayed Jarvis, and his camera, with pepper spray.  *Id.*  Though Jarvis was allegedly "partially blinded and disoriented," he "wiped the liquid from his camera and resumed filming."  *Id.* ¶ 170.  An unknown Richmond Police officer then allegedly followed Jarvis and "continued to douse him with pepper spray."  *Id.* ¶ 171.  Jarvis refers to the "multiple scrapes and bruises" he sustained "from being shoved and bashed by the police," yet his account from June 15 is devoid of any allegations that he was shoved or bashed by the RPD.  *See id.* ¶174; see *generally id.* ¶¶ 169-73.

### 4.   June 21, 2020 – Jarvis's allegations against unknown police officers

Plaintiff Jarvis was in attendance at the same protest as Plaintiff Andrew Ringle on June 21, 2020.  *See id.* ¶ 176.  At approximately 10:20 p.m., Jarvis "observed the deployment of less lethal ammunition," and at 10:33 p.m., police detonated a tear gas canister that gassed Jarvis.  *See id.* ¶ 177.  At 10:35 p.m., two unknown Richmond Police officers "began handling their tear gas foggers while facing Jarvis and others."  *Id.* ¶ 178.  Officers shined their flashlights into Jarvis's camera to allegedly prevent him from filming.  *See id.* ¶¶ 178, 181

### 5.   July 25, 2020 – Jarvis's allegations against unknown police officers

On July 25, 2020, Jarvis was standing in the same parking lot as Plaintiff Eduardo Acevedo (discussed below) near Richmond Police Headquarter when Jarvis allegedly was struck with a gas canister.  *See id.* ¶ 184.  Unknown Richmond Police Officers "grabbed Acevedo, pulled his hands

behind his back, and pushed him face down on the ground, despite his shouts identifying himself as a journalist." *Id.* ¶ 122.  The officers eventually released Acevedo.  *See id.*  Plaintiff Jarvis witnessed the exchange between Acevedo and the police.  *See id.* ¶¶ 187-88.

> **6.      August 16, 2020 – Jarvis's allegations against Officers Beasley, Gleason, Leone, an Ruiz-Oyler**

On August 16, 2020, Plaintiff Jarvis was allegedly followed by Officers Beasley, Gleason, Leone, and Ruiz-Oyler after he approached the officers who "appeared to be harassing a group of pedestrians on the sidewalk." *Id.* ¶¶ 189-191.  Officers Leone and Ruiz-Oyler allegedly taunted Jarvis as he crossed the street "to remove himself from the situation." *Id.* ¶ 191.  Later that same night, Plaintiff Jarvis was allegedly followed by a white Richmond Police van and cruiser.  Id. ¶ 193.  Jarvis had another interaction with Officer Beasley on August 18, 2020 when the SUV Officer Beasley was riding in allegedly followed Jarvis and Officer Beasley "waved at Jarvis through the open window." *Id.* ¶ 199.  Later that same day, the driver of a Richmond Police SUV that was allegedly following Jarvis "vigorously pointed in Jarvis' direction and waved." *Id.* ¶ 200.  Aside from his opinions about the Officers' alleged actions, Jarvis does not allege any injuries sustained as a result of these alleged interactions.  *See generally id.* ¶¶ 189-200.

> **7.      August 18, 2020 – Jarvis's allegations against Officer Beasley**

Jarvis had another interaction with Officer Beasley on August 18, 2020 when the SUV Officer Beasley was riding in allegedly followed Jarvis and Officer Beasley "waved at Jarvis through the open window." *Id.* ¶ 199.  Later that same day, the driver of a Richmond Police SUV that was allegedly following Jarvis "vigorously pointed in Jarvis' direction and waved." *Id.* ¶ 200.  Aside from his opinions about the Officers' alleged actions, Jarvis does not allege any injuries sustained as a result of these alleged interactions.  *See generally id.* ¶¶ 189-200.

**8.     August 20, 2020 – Jarvis' claims against Officers Beasley, Peppel, Frazer, Harris, Malone, Craig, Mills, Buraliev, O'Rourke, Colombo, Bondy, Kuti, McHugh, and Ruiz-Oyler.**

On August 20, 2020, at about 10:00 p.m., Jarvis "arrived at GWARbar . . . intending to have a drink and see if anyone would show up after an anonymous call to action was posted earlier in the day." *Id.* ¶ 201.  By 10:30 p.m., there was allegedly "over two dozen Richmond Police Department officers and multiple vehicles, including an armored truck," surrounding the GWARbar property.  *Id.* ¶ 214.  A few minutes after 11:00 p.m., Jarvis was filming Plaintiff Minium's arrest (discussed below) when Officer Ben Malone allegedly threw Jarvis on the ground, causing a wrist injury.  *Id.* ¶ 221.  Jarvis does not allege that he was detained or arrested.  See *generally id.* ¶¶ 221-26.

**9.     September 14, 2020 – Jarvis's allegations against Officer Lloyd**

On September 14, 2020, Jarvis claims he was present to witness a peaceful daytime demonstration and march between Martin Luther King, Jr. Middle School and City hall when he witnessed and filmed Officer Lloyd following the protestors.  *Id.* at ¶¶ 227-228.

**10.    September 25, 2020 – Jarvis's allegations against Officer Harris, Bridges, and Ruiz-Oyler**

Shortly after midnight on September 25, 2020, Jarvis was present at another protest outside of Richmond Police Headquarters.  *Id.* ¶ 229.  Officer Harris allegedly bashed Jarvis with his riot shield.  Id. ¶ 230.  Around 1:30 a.m., Officer Ruiz-Oyler allegedly put "her hand over Jarvis' camera lens, slapp[ed] his arm, and yell[ed] 'Move, Jimmie!' while shoving Jarvis backwards into another individual."  *Id.* ¶ 233.

8

**11.      October 17, 2020 – Jarvis's allegations against Officers Lloyd, Bridges, and Harris.**

On October 17, 2020, Jarvis was walking and was allegedly followed by Officer Lloyd at approximately 11:30 a.m. and again at 2:15 p.m.  *Id.* ¶¶ 234, 237.  In the interim, at 1:15 p.m., Officer Bridges allegedly shouted "Happy Birthday" at Jarvis from the passenger side of a Richmond Police Vehicle, and 20 minutes later, Officer Harris allegedly mocked Jarvis as Jarvis walked to the parking lot of Davis Market.  *Id.* ¶ 236.

**12.      October 27, 2020 – Jarvis's allegations against Officer Harris**

On October 27, 2020, Jarvis had another encounter with Officer Harris near Monroe Park wherein Officer Harris allegedly "made a series of sarcastic and defamatory remarks to Jarvis." *Id.* ¶ 238.  Jarvis was apparently filming this encounter and continued to film throughout.  Id. ¶ 242.  Later that night, Jarvis witnessed an arrest and began filming it, but an unknown Richmond Police officer "directed his flashlight into Jarvis's face and camera, and Jarvis was unable to see." *Id.* ¶ 244.

**13.      November 7, 2020 – Jarvis's allegations against Officer Lloyd**

On November 7, 2020, Jarvis was "documenting" a pro-Trump rally near the State Capital when he observed and subsequently filmed Officer Lloyd following him.  *Id.* at ¶¶ 245-48.

**14.      November 12, 2020 – Jarvis's allegations against Officer Lloyd and unknown police officers**

On November 12, 2020, Jarvis noticed Officer Lloyd following him while "documenting" a "Stop the Steal" rally.  *Id.* at ¶ 250.  Jarvis further observed unknown Richmond Police officer "chatting casually with pro-Trump demonstrators" and claims that one unknown officer "suggest[ed] to the pro-Trump crowd they were free to do as they like with regard to the counter-protestors."  *Id.* at ¶ 252.  Aside from his opinions about the Officers' alleged actions, Jarvis does

not allege any injuries sustained as a result of these alleged interactions.  See generally id. ¶¶ 234-52.

**E.**   **Alice Minium's allegedly unlawful arrest on August 21, 2020**

On August 20, 2020, Plaintiff Alice Minium ("Plaintiff Minium" or "Minium") was at GWARbar on West Clay Street when a dozen or more Richmond Police officers allegedly lined up along the sidewalk.  *Id.* at ¶¶ 201, 253.  An unknown Richmond Police officer allegedly approached Minimum "and demanded identification from her and everyone in the crowd."  *Id.* ¶ at 255.  When she inquired as to the reason for the identification request, Officer Ruiz-Oyler and Officer Bondy allegedly "forcibly yanked Minium from her peers and threw her to the ground, where she suffered injuries."  *Id.* ¶ 259.  Minium was charged with conspiracy to incite a riot, and taken to the magistrate's office.  *Id.* ¶¶ 260-61.

**F.**   **Éilís Weller's  allegedly unlawful arrest on June 16, 2021**

Plaintiff Éilís Weller claims to have been unlawfully arrested on June 16, 2021 by Officer Paul Campbell.  *Id.* at ¶¶ 279-287.  Weller asserts they were arrested while trying to record police presence after a peaceful protest near Scuffletown Park.  *Id.*  Weller claims they were forcibly dragged by an unknown officer and arrested by Officer Campbell.  *Id.* at ¶ 283.  Weller was released on a summons for violation Va. Code § 46.2-928.  *Id.* at ¶¶ 285-86.

**G.**   **Andrew Ringle's encounters with police on June 21, 2020 and July 26, 2020**

Plaintiff Andrew Ringle alleges he was unlawfully seized when he was sprayed in the face with pepper spray on June 21, 2020 and when he was detained on July 26, 2020.  *Id.* at ¶¶ 99-113.  The events did not involve the same officers and presented completely different scenarios.

### 1. June 21, 2020

On June 21, 2020, Ringle was reporting on a demonstration at the former statue of J.E.B. Stuart on behalf of Virginia Commonwealth University's student newspaper, Commonwealth Times. [ECF No. 1 at ¶¶ 99-106]. Ringle claims he was "sprayed twice in the face by a Richmond Police officer despite clearly identifying himself as press and wearing a state-issued press badge." *Id.* at ¶¶ 101-02. Ringle alleges, upon information and belief, that Officer Steve Rawlings is the officer who pepper sprayed him. *Id.* at ¶ 103. Ringle further alleges that an unknown officer pricked him up by his shirt and threw him into the street after he had been sprayed. *Id.* at ¶ 104.

### 2. July 26, 2020

Ringle claims he was reporting on another demonstration in Monroe Park on July 26, 2020 when he was "rushed by unknown Richmond Police officers" and "grabbed and handcuffed before he could make it outside the park" after officers ordered everyone to leave. *Id.* at ¶¶ 107-10. Ringle was released and told not to return to Monroe Park after his press credentials were verified. *Id.* at ¶ 112.

### H. Eduardo Acevedo's encounter with police on July 25, 2020

On July 25, 2020, Plaintiff Eduardo Acevedo alleges he was a VCU Commonwealth Times reporter coving a protest outside of the Richmond Police Headquarters when he was "hit by tear gas," "swarmed by police," and placed face down on the ground despite identifying himself as a member of the press. *Id.* at ¶¶ 114-131. Acevedo was released after showing his press credentials. *Id.* at ¶ 124. He does not identify the names of the officers involved.

### I. Incidents that took place after June 26, 2020 did not occur during the former Chiefs' tenure.

Defendants William Smith ("former Chief Smith") and William Blackwell ("former Chief Blackwell") (collectively the "former Chiefs") were employed for a limited time and were not in

11

their roles during most of the claims in the Complaint. Only the events alleged to have occurred on (1) May 31 – June 1, 2020, by Plaintiff Jarvis, Compl. at ¶¶ 154-159; (2) June 14-15, 2020, by Plaintiff Jarvis, *id.* ¶¶ 160-168; and (3) June 15, 2020, by Plaintiff Jarvis, *id.* ¶¶ 169-175, fell during former Chief Smith's tenure. Only the events alleged to have occurred (1) on June 21, 2020, by Plaintiffs Ringle and Jarvis, Compl. ¶¶ 99-106, 176-181; and (2) on June 26, 2020 by Plaintiff Schmidt, *id.* ¶¶ 55-96, fell during former Chief Blackwell's tenure.

### III.   LAW AND ARGUMENT

#### A.   Legal Standard

Rule 20(a)(1) of the Federal Rules of Civil Procedure provides that "[p]ersons may [be] join[ed] in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Similarly, Rule 20(a)(2) provides that defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). Rule 20 requires that the plaintiffs meet both parts of the two-prong tests. *See Gregory v. FedEx Ground Package Sys., Inc.*, 2:10CV630, 2012 WL 2396873, at *9 (E.D. Va. May 9, 2012), adopted by 2012 WL 2396861 (E.D. Va. June 25, 2012) (for joinder to be proper, plaintiffs must satisfy both conditions set forth in Rule 20).

Under longstanding Fourth Circuit law, although courts are to construe the permissive joinder provision liberally, they also are to construe it "in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple

lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (affirming severance); *Aleman v. Chugach Support Servs.*, Inc., 485 F.3d 206, 218 n.5 (4th Cir.2007) (citation and internal quotation omitted) (same).  The district court has the discretion to deny joinder if permitting it would not foster the purpose of the joinder rule.  *Id.* (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1652 (3d ed. 2001)).

Indeed, courts have the discretion to deny joinder even if the two-pronged test for permissive joinder is satisfied, in the interests of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.  *See Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (citing Aleman, 485 F.3d at 218 n.5); *cf. El v. Clarke*, 3:12CV402, 2014 WL 2611336, at *2 (E.D. Va. June 11, 2014) (denying joinder of defendants).  Federal Rule of Civil Procedure 21 provides the Court with broad discretion to add or drop a party or to sever any claim against a party.  Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, . . . sever any claim against a party."); *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319 (E.D. Va. 2015) (the decision to grant severance "is committed to the discretion of the trial court.") (quoting *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 692 (4th Cir. 1978)).  Rule 21 "is not limited to situations where there has been a finding of improper joinder or improper venue."  *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2nd Cir.), cert. denied, 393 U.S. 977 (1968); *Sporia v. Pennsylvania Greyhound Lines*, 143 F.2d 105, 106-107 (3rd Cir. 1944) (same).  "Some courts have said that, when assessing severance, courts wield virtually unfettered discretion in determining whether and when to sever a claim."  *Moulvi v. Safety Holdings, Inc.*, No. 3:20CV595, 2021 WL 4494191, at *6 (E.D. Va. Sept. 30, 2021).

In determining whether severance is proper, district courts within the Fourth Circuit consider: "(1) whether the issues sought to be tried separately are significantly different from one

another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed." *RAI Strategic Holdings, Inc. v. Altria Client Servs. LLC,* No. 1:20cv393, 2020 WL 6882646, at *2 (E.D. Va. Sept. 3, 2020). "Courts also consider (5) fundamental fairness, (6) judicial economy, (7) undue delay, and (8) the dual threat of duplicative litigation and inconsistent verdicts." *Moulvi*, 2021 WL 4494191, at *6 (E.D. Va. Sept. 30, 2021) (quoting *Latson v. Clarke*, No. 1:16cv447, 2016 WL 11642365, at *3 (E.D. Va. Oct. 14, 2016); *see also Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319–20 (E.D. Va. 2015)).

**B.   All of the factors for severing the claims are satisfied.**

**1.   Factor 1 – The issues sought to be tried are significantly different.**

The Complaint makes allegations about 23 separate and distinct incidents, covering 21 different dates, and involving over 83 parties (i.e., eight plaintiffs, 22 named Richmond police officers, three different police chiefs, and 50 unknown police officers, and unknown officers from Virginia State Police and Henrico County Police Department that were referenced). Most, but not all of the police encounters that are the subject of this lawsuit, may broadly fall under the umbrella of the Richmond Police Department's response to the civil rights protests following the George Floyd incident. However, some of the claims asserted by Jarvis, for example, arise from a totally different political movement to include pro-Trump rallies following the 2020 election. Regardless, each of Plaintiffs' claims concern a separate factual scenario that almost always involved different officers and different circumstances (e.g., protestors versus legal and media observers). The claims asserted by Plaintiffs all rise or fall on their own and should be severed. When plaintiffs assert superficially similar claims but which will require different fact witnesses and individualized proof

regarding damages, cases are properly severed.  *See*, *Baughman v. Lee Cty.*, 554 F. Supp. 2d 652 (N.D. Miss. 2008).

In *Baughman*, twenty-seven (27) plaintiffs, each alleged that he or she was unnecessarily strip-searched at a county jail, in violation of his or her Constitutional rights.  *Id*.  In determining that the plaintiffs' claims were properly severed pursuant to Fed. R. Civ. P. 21, the *Baughman* court considered "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." *Id*. at 653, citing *McFarland v. State Farm Fire & Cas. Co.,* 2006 U.S. Dist. LEXIS 63963, 2006 WL 2577852 (S.D. Miss. 2006).

This case, like *Baughman*, involves plaintiffs who assert what are superficially similar claims; however, the claims will require different fact witnesses and individualized proof regarding damages. The instant lawsuit does not arise from a single incident in which large numbers of individuals were deprived of a substantive right at the same time.  To the contrary, the complaint alleges a series of no fewer than twenty-three (23) separate and distinct encounters with different members of the Richmond police department which took place between May 31, 2020, 2020 (ECF No. 1, ¶¶ 154-159) and June 16, 2021 (ECF No. 1, ¶279).  To be clear, this case does not arise out of Richmond police use of non-lethal deterrents or excessive use of force during a single protest event, or series of contemporaneous protest events.

In addition, the facts in this case call for severance, because the plaintiffs possess dissimilar backgrounds leading up to their interaction with members of the Richmond police department. Plaintiff Schmidt claims that his interaction with the Richmond police department arose out of his

monitoring of police activity as a trained legal observer and cooperating attorney with the American Civil Liberties Union.  (ECF No. 1, ¶¶57, 59.)  Two (2) of the eight (8) plaintiffs (Ringle and Acevedo) assert that they identified themselves as members of the press prior to their interaction with the police.  (ECF No. 1, ¶¶99, 114.)  Plaintiff, Jimmie Lee Jarvis' claims arise not out of one (1) interaction with Richmond police, but fourteen (14) separate and distinct incidents involving different defendants under different circumstances over a period of months.  Plaintiff, Eilis Weller's alleged unlawful arrest occurred on June 16, 2021 (ECF No. 1, ¶279), approximately six (6) months after any other claims by co-plaintiffs.

**Courts in the Fourth Circuit are "reluctant to find reasonable relatedness where plaintiffs allege similar harms committed by different actors, at different times, and in different places."** *Gregory*, 2012 WL 2396873, at *11; *see also Saval*, 710 F.2d at 1032 (the district court did not abuse its discretion "in determining that the allegedly similar [automotive] problems did not satisfy the transaction or occurrence test.").  "[M]erely committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008).  Here, because the allegations asserted by Plaintiffs arose under markedly different circumstances and involve different defendants, the cases are properly severed.

2.    **Factor 2 – Plaintiffs' claims against each Defendant will be based on substantially different proof as to differing elements of the claims asserted.**

Given the differing nature of the claims between those asserted by each Plaintiff against the various Defendants, it is not surprising that the claims will require separate proof, which also favors severance.  Each plaintiff will be required to present individualized proof regarding the circumstances and nature of the police interaction in question.  The manner in which the alleged first amendment retaliations occurred is different (e.g., pepper spray versus "taunting" or

16

following).  When and how plaintiffs were allegedly seized varies (hands-on versus use of other types of force such as pepper spray).  Further, the allegations in the Complaint do not tell the whole story as they relate to common legal claims.  Plaintiffs' broadly seek damages against over 83 police officer defendants who were not similarly situated or otherwise involved in the encounters between the other Plaintiffs or other Defendants.  The individualized nature of the facts in the present case will determine whether each Plaintiff possesses a valid claim and whether each individual defendant may be liable under the circumstances presented.

Further, each Plaintiff alleges that they suffered "physical pain and injury, emotional distress, property loss, lost employment opportunities and economic damages."  [ECF No. 1, at ¶ 289].  Each Plaintiff also alleges they have suffered "emotional trauma and injury, which persist to the present, including fear, anxiety and emotional distress."  *Id.* at ¶291.  Federal law requires that, to recover emotional distress damages, a plaintiffs must each demonstrate a "specific discernable injury to [his] emotional state" resulting from a constitutional violation, proven with evidence regarding the "nature and extent" of the harm. *Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 938-40 (5th Cir. 1996).  As such, each Plaintiff will presumably be relying on different witnesses and/or experts at trial.  Accordingly, combining Plaintiffs' claims into one action is inappropriate under the facts set forth in the Complaint and would confuse a jury.

### 3. Factor 3 – Plaintiffs' will suffer no prejudice if their claims are severed now.

Plaintiffs will not be prejudiced and instead will benefit from severance of their disparate claims against the many defendants.  While some Plaintiffs may be required to be deposed in separate cases to the extent they witnessed some of the acts complained of by another Plaintiff, it is hard to see "how being deposed on more than one occasion would prejudice Plaintiff[s], considering that [they] instituted this action" and are entitled to be deposed by each party. *See,*

*e.g.*, *Latson v. Clarke*, No. 1:16cv447, 2016 WL 11642365, at *6.  Rather, all parties will benefit from the avoidance of jury confusion at trial.  *See, e.g.*, *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (granting separate trials following initial joinder due to potential prejudice in the minds of the jury associated with the admissibility of certain evidence), aff'd on other grounds, 899 F.2d 183 (2d Cir. 1990); *United States v. Hassoun*, 477 F. Supp. 2d 1210, 1229 (S.D. Fla. 2007) ("In this instance, this Court is not convinced that even a fair and reasonable juror could undeniably avoid an evidentiary spillover [with respect to the divergent claims against the co-defendant] that could potentially poison the well of pure unbiased thought.")

### 4.   Factor 4 – Defendants will be prejudiced in all stages of the litigation if severance is denied.

On the other hand, without severance, Defendants will be highly prejudiced.  Specifically, if the case is to proceed as currently consolidated, individual police officers (sued in their individual capacity) stand to be held liable by virtue of their mere association with the Richmond Police Department.  Further, most of the allegations happened after the former Chiefs were no longer employed in that role.  Allowing these claims to proceed as a single case may also prejudice the police defendants if one plaintiff has a stronger claim than the others.  By way of example, if the Court were to permit a single jury to review condemning evidence pertinent to only one of the eight Plaintiffs and one or a few Defendants, it would be highly prejudicial to any Defendant who was not involved with that particular incident. This point is critical, as it highlights the extremely high likelihood of juror confusion if Plaintiffs' claims are permitted to remain consolidated.  The separate and distinct fact scenarios associated with each of the approximately twenty-three (23) police interactions described in the Complaint outweigh any of the minimally common legal questions posed by the purportedly shared claims of Plaintiffs in this case.

**5.      Factors 5-8 – Principles of fairness, efficiency, and achieving the correct result compel severance.**

Litigation of Plaintiffs' claims against all Defendants simultaneously is inefficient and unfair to all Defendants.  Plaintiffs' claims are separate from one another, and the allegations against each Defendant are also distinct.  Where different evidence is involved, including different witnesses, so that a single jury could be easily confused, courts frequently hold that joinder is improper. *See, e.g.*; *Martinez v. Haleas*, No. 07 C 6112, 2010 WL 1337555, at *3 (N.D. Ill. Mar. 30, 2010)  ("While there are similarities between each of the arrests in question-Haleas  was  the arresting officer in each and each arrest was for DUI-all of the arrests took place on different dates, in different locations, and under distinct circumstances during a two year period.").

As stated above, trying these actions as one would also lead to significant inefficiency, as the Court and the Parties struggle to distinguish and limit the impact of evidence. For example, when receiving evidence about Jarvis's many alleged interactions with various different Defendants on 14 different occasions that each present distinct scenarios, the Court is not going to be able to ensure that the jury understands that the evidence from just one of the Jarvis claims is only germane to the specific date and time at issue.  This problem is exponentially compounded when you add to Jarvis's claims the claims of seven other Plaintiffs, none of which have a connection to each other.

Moreover, any marginal efficiency gained through joinder will be offset by several efficiency gains through severance. For instance, upon severance, pleadings and motions will be filed relating to only one claim, allowing for sharper identification of the allegations and defenses at issue and far less confusion for the Court in resolving such claims.  Accordingly, this Motion to Sever should be granted. *See Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 517- 18 (N.D. Il. 2000) ("A single trial would require the jury to keep separate each plaintiff's individualized claim . . .

19

presenting the jury with the 'hopeless task' of trying to discern who did and said what to whom and for what reason.").

IV.   **CONCLUSION**

For these reasons, Defendants jointly request the Court to sever the claims of each Plaintiff for each incident.

**CITY OF RICHMOND, WILLIAM C. SMITH, IN HIS INDIVIDUAL CAPACITY, GERALD M. SMITH, IN HIS INDIVIDUAL CAPACITY, JOHN BRIDGES, IN HIS INDIVIDUAL CAPACITY, THOMAS W. LLOYD, IN HIS INDIVIDUAL CAPACITY, JAKOB A. TORRES, IN HIS INDIVIDUAL CAPACITY, BRENDA RUIZ-OYLER, IN HER INDIVIDUAL CAPACITY, BENJAMIN J. FRAZER, IN HIS INDIVIDUAL CAPACITY, APRIL M. DIXON, IN HER INDIVIDUAL CAPACITY, PATRICK DIGIROLAMO, IN HIS INDIVIDUAL CAPACITY, PAUL D. CAMPBELL, IN HIS INDIVIDUAL CAPACITY, JUNIUS THORPE, IN HIS INDIVIDUAL CAPACITY, NICO YOUNG, IN HIS INDIVIDUAL CAPACITY, JOHN BEASLEY, IN HIS INDIVIDUAL CAPACITY, CHRISTOPHER GLEASON, IN HIS INDIVIDUAL CAPACITY, FRANK SCARPA, IN HIS INDIVIDUAL CAPACITY, KATE LEONE, IN HER INDIVIDUAL CAPACITY, DUANE PEPPEL, IN HIS INDIVIDUAL CAPACITY, KHALID HARRIS, IN HIS INDIVIDUAL CAPACITY, BEN MALONE, IN HIS INDIVIDUAL**

**CAPACITY, TYLER CRAIG, IN HIS INDIVIDUAL CAPACITY, KEEGAN MILLS, IN HIS INDIVIDUAL CAPACITY, DARIO BURALIEV, IN HIS INDIVIDUAL CAPACITY, DOMINIC COLOMBO, IN HIS INDIVIDUAL CAPACITY, DAN BONDY, IN HIS INDIVIDUAL CAPACITY, JASON KUTI, IN HIS INDIVIDUAL CAPACITY, STEVE RAWLINGS, IN HIS INDIVIDUAL CAPACITY, OFFICER DOES 1-50, IN THEIR INDIVIDUAL CAPACITIES**

By Counsel

/s/ David P. Corrigan
David P. Corrigan (VSB No. 26341)
M. Scott Fisher, Jr. (VSB No. 78485)
Blaire H. O'Brien (VSB No. 83961)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
sfisher@hccw.com
bobrien@hccw.com
*Counsel for Defendants Jon Bridges, Thomas W. Lloyd,*
*Jakob A. Torres, Brenda Ruiz-Oyler, Benjamin J. Frazer,*
*April M. Dixon, Patrick Digiolamo, Paul D. Campbell*
*Junius Thorpe, Nico Young, John Beazley, Christopher Gleason,*
*Frank Scarpa, Kate Leone, Duane Peppel, Khalid Harris,*
*Ben Malone, Tyler Craig, Keegan Mills, Dario Buraliev,*
*Dominic Colombo, Dan Bondy, Jason Kuti, and Steve Rawlings*

/s/ _____
Steven D. Brown (VSB No. 42511)
Lindsay A. Strachan (VSB No. 84506)
Whitney E. Nelson (VSB No. 95911)
IslerDate P.C.
111 East Main Street, Suite 1605
Richmond, Virginia  23219
804-489-5500 - Phone
804-234-8234 - Fax
sbrown@islerdare.com
lstrachan@islerdare.com
wnelson@islerdare.com
*Counsel for Defendants William Smith
and William Blackwell*


/s/ _____
Mark C. Nanavati, Esq. (VSB #38709)
G. Christopher Jones, Jr., Esq. (VSB #82260)
Benjamin F. Dill, Esq. (VSB#93000)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3864 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
bdill@snllaw.com
*Counsel for* Defendant *Gerald M. Smith*


/s/ _____
Wirt P. Marks (VSB No. 36770)
Senior Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia  23219
804-646-3019 - Phone
804-646-7939 - Fax
Wirt.Marks@Richmondgov.com
*Counsel for Defendant City of Richmond*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 8th day of August, 2022, a true and accurate copy of the foregoing was filed with the Clerk using the CM/ECF system, which will send a notification to all counsel of record.

/s/ David P. Corrigan
David P. Corrigan (VSB No. 26341)
M. Scott Fisher, Jr. (VSB No. 78485)
Blaire H. O'Brien (VSB No. 83961)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
sfisher@hccw.com
bobrien@hccw.com
*Counsel for Defendants Jon Bridges, Thomas W. Lloyd,*
*Jakob A. Torres, Brenda Ruiz-Oyler, Benjamin J. Frazer,*
*April M. Dixon, Patrick Digiolamo, Paul D. Campbell*
*Junius Thorpe, Nico Young, John Beazley, Christopher*
*Gleason, Frank Scarpa, Kate Leone, Duane Peppel, Khalid*
*Harris, Ben Malone, Tyler Craig, Keegan Mills, Dario*
*Buraliev, Dominic Colombo, Dan Bondy, Jason Kuti,*
*and Steve Rawlings*

/s/
Steven D. Brown (VSB No. 42511)
Lindsay A. Strachan (VSB No. 84506)
Whitney E. Nelson (VSB No. 95911)
IslerDate P.C.
111 East Main Street, Suite 1605
Richmond, Virginia  23219
804-489-5500 - Phone
804-234-8234 - Fax
sbrown@islerdare.com
lstrachan@islerdare.com
wnelson@islerdare.com
*Counsel for Defendants William Smith*
*and William Blackwell*

23

/s/ _____
Mark C. Nanavati, Esq. (VSB #38709)
G. Christopher Jones, Jr., Esq. (VSB #82260)
Benjamin F. Dill, Esq. (VSB#93000)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3864 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
bdill@snllaw.com
*Counsel for* Defendant *Gerald M. Smith*

/s/ _____
Wirt P. Marks (VSB No. 36770)
Senior Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia  23219
804-646-3019 - Phone
804-646-7939 - Fax
Wirt.Marks@Richmondgov.com
*Counsel for Defendant City of Richmond*

24