UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **CHARLES H. SCHMIDT, JR., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No.: 3:22-cv-404 |
| ) | |
| **CITY OF RICHMOND,** ) | |
| ) | |
| **Defendant.** ) | |

## CITY OF RICHMOND'S STATEMENT OF POSITION

Defendant City of Richmond (the "City"), by counsel, in accordance with the Court's Order entered on January 23, 2023 (ECF No. 230) requiring the parties to file a Statement of Position, states as follows:

**A.** **At the times of each of the several events described as protests in the Second Amended Complaint and the memoranda, were permits required for the events and, if so, were permits were obtained; and what were the effect on plaintiffs' claims of (a) the fact that the event was held pursuant to a permit; or (b) the fact that the event occurred without a required permit.**

Pursuant to City Code § 27-417, "[i]t shall be unlawful for any person to conduct or participate in a marathon and walking or physical endurance contest or exhibition, public assembly, demonstration or parade on the public streets, sidewalks, or other public property of the City in a place open to the general public for which a written permit has not been issued in accordance with the provisions of this article."  This code section does not apply to spontaneous events which are defined as "an unplanned or unannounced coming together of people, animals or vehicles in a parade or public assembly which was not contemplated beforehand by any participant therein and which is caused by or in response to unforeseen circumstances or events occasioned

by news or affairs first coming into public knowledge within 15 days of such parade or public assembly." City Code § 27-416.

The City agrees with Plaintiffs. The events relevant to Plaintiffs' claims occurred during a spontaneous event, occurred on private property or involved less than ten (10) people. Accordingly, a permit was not required. No permits were issued by the City for any of the events involving the Plaintiffs in this matter. The events giving rise to Plaintiffs' claims were not held pursuant to a permit and were not held without a required permit. In conclusion, the fact that there were no permits obtained for the events has no effect on Plaintiffs' claims.

**B.    What is the applicable law by which to measure whether each plaintiff may be considered as a member of the press?**

Members of the press are not limited to individuals who work for newspapers and periodicals, but instead, "[t]he press in its historical connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Branzburg*, 408 U.S. 665, 704 (1972) (quoting *Lovell v. Griffin*, 303 U.S. 444, 450, 452 (1938)). This is because "the First Amendment's protection of the freedom of the press extends to individuals and groups in addition to commercial news organizations." *Religious Tech Ctr. v. Lerma*, 908 F. Supp. 1353, 1359 (E.D. Va. 1995). In fact, the liberty of the press extends from "the lonely pamphleteer who uses carbon paper or a mimeograph" to "the large metropolitan publisher who utilizes the latest photocomposition methods." *Id.* (quoting *Branzburg*, 408 U.S. at 704).

The difficulty, as recognized by the Supreme Court in *Branzburg*, is that "[a]lmost any author may quite accurately assert that he is contributing to the flow of information to the public…" *Branzburg*, 408 U.S. at 705. In addition, the Internet has evolved into "a universal newspaper and public forum" for which "law has not yet decided how to deal with." *Lerma*, 908 F. Supp. at 1359. Accordingly, in some cases where courts have had to fashion injunctive relief amongst allegations

2

that law enforcement infringed on the constitutional rights of members of the press while documenting protests, it has been necessary to require members of the press to identify themselves. *See, e.g.*, *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 841 (9th Cir. 841 n.4 2020) ("To facilitate…identification of Journalists protected under this Order, the following shall be considered indicia of being a Journalist: visual identification as a member of the press, such as by carrying a professional or authorized press pass, carrying professional gear…standing off to the side of a protest, not engaged in protest activities, . . .); *Goyette v. City of Minneapolis*, 338 F.R.D. 109, 117 (D. Minn. 2021) ("The general dispersal orders lack narrow tailoring…other courts in similar circumstances have required members of the press to adequately identify themselves, refrain from impeding law enforcement activities, and comply with all laws other than general dispersal orders…").

**C.    What is the applicable law addressing: (a) the obligations of members of the press to obey the instructions of law enforcement officers who are dealing with the specific events alleged in the Second Amended Complaint; and (b) the extent to which a member of the press can be considered to assume the risk of actions taken by law enforcement officers when those officers are dealing with the events (event by event) alleged in the Second Amended Complaint.**

The City concurs with the Plaintiffs' assertion that journalists have the same rights as the general public to observe, photograph, and record in public places. The City also agrees that journalists are obligated to comply with the law and lawful police orders to the same extent that members of the public are required. Said differently, the First Amendment does not confer a greater degree of rights or special privileges to journalists that would permit them to disregard lawful police orders. "The First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability. Under prior cases, otherwise valid laws serving substantial public interests may be enforced against the press as against others, despite the possible burden that may be imposed." *Branzburg*

3

*v. Hayes*, 408 U.S. at 682-683; *see Bartnick v. Hopper*, 532, U.S. 514, 525 (2001) (drawing "no distinction" between members of the press and a private citizen for First Amendment purposes).

As such, Plaintiffs were required to obey the instructions of law enforcement officers dealing with the specific events alleged in the Second Amended Complaint regardless of any press status. While the City is aware of EO64 and acknowledges that the enacted curfew did not apply to members of the press, none of the circumstances in the Second Amended Complaint arose from law enforcement attempting to enforce the curfew on a press member, or from charges stemming from a curfew violation against a member of the press. However, there are instances alleged where Plaintiffs had encounters with RPD officers after an unlawful assembly was declared. Nothing in EO64 permitted a member of the press to disregard an unlawful assembly declaration.

For instance, Eduardo Acevedo's allegations occurred within the context of an unlawful assembly. Plaintiff Acevedo was covering a protest outside of the Richmond Police Headquarters, when at approximately 11:00 p.m., an unlawful assembly was declared. Shortly thereafter someone in the crowd threw a flaming object into a Humvee that had been parked to block protestors. This was an exceptionally chaotic scene, and it was within this context that Acevedo makes his allegations. The law is clear that in this circumstance, Acevedo is obligated to comply with the lawful orders of police officers to the same extent that any other citizen would be required to. He is not in a position to disregard the unlawful assembly order under the guise that he is somehow exempt because he is a member of the press. He was required to disperse like anyone else. Plaintiffs flip this paradigm and insist their interactions with RPD officers occurred because of their press status, when in reality it was regardless of their press status, since it does not authorize them to disregard the lawful orders of police officers.

Assumption of the risk has two requirements under Virginia law: "the nature and extent of the risk must be fully appreciated and the risk must be voluntarily incurred." *Amusement Slides Corp. v. Lehmann*, 217 Va. 815, 232 S.E.2d 803, 805 (1977).  "Knowledge of the risk is essential to assumption." *Budzinski v. Harris*, 213 Va. 107, 189 S.E.2d 372, 375 (1972).  Assumption of the risk "involves a subjective test[:] whether a plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Artrip v. E.E. Berry Equip. Co.*, 240 Va. 354, 397 S.E.2d 821, 824, 7 Va. Law Rep. 764 (1990).  The majority of cases involving assumption of the risk arise in the tort context.

That said, if a member of the press is present in a situation that involves a grave risk of injury, like Plaintiff Acevedo, the context of his presence in, or adjacent to a riotous mob, is critical in assessing whether the officer's actions were objectively reasonable.  That context is significant in evaluating any Plaintiff's claim that arose while they were positioned within highly kinetic events where officers were attempting to quell public uprisings.  It is foreseeable, for instance, that police officers would use gas to disperse a crowd after an unlawful assembly was declared and a flaming object was tossed into a Humvee used to barricade protesters.  The situation posed a substantial risk to life, limb, and property, and officers have limited less-than-lethal options at their disposal to disband what was effectively a mob.  Anyone who does not disperse rapidly in a scenario like that does so at their own risk.

Dated:  February 24, 2023.                    Respectfully submitted,

By:  _____/s/_____

        Wirt P. Marks, Esquire (VSB #36770)
        Senior Assistant City Attorney
        Zachary P. Grubaugh, Esquire (VSB #83944)
        Assistant City Attorney
        City Hall, Room 400
        900 East Broad Street
        Richmond, Virginia 23219
        Telephone: (804) 646-3019
        Facsimile: (804) 646-7939
        Email: Wirt.Marks@rva.gov
        Email: Zachary.Grubaugh@rva.gov
        *Counsel for Defendant City of Richmond*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of said filing to the following counsel of record:

>Terry C. Frank, Esquire
>Terry Frank Law
>108 E. Grace Street, Suite 001
>Richmond, Virginia 23219
>Telephone: (804) 899-8090
>Facsimile: (804) 899-8229
>Email:  terry@terryfranklaw.com
>*Counsel for Plaintiffs*

>_____/s/_____
>Wirt P. Marks, Esquire (VSB #36770)
>Senior Assistant City Attorney
>City Hall, Room 400
>900 East Broad Street
>Richmond, Virginia  23219
>Telephone:  (804) 646-3019
>Facsimile:  (804) 646-7939
>Email:  Wirt.Marks@rva.gov
>*Counsel for Defendant City of Richmond*