UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| **CHARLES H. SCHMIDT, JR.,** *et al.*, )<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>**CITY OF RICHMOND,** )<br>)<br>*Defendants.* )<br>_____ ) | Case No. 3:22-cv-404 |

### **PLAINTIFFS' REPLY STATEMENT OF POSITION**

COME NOW the Plaintiffs, Charles H. Schmidt, Jr., Kristopher C. Goad, Greyson Goodenow, *aka* Vanna Goodenow, Jimmie Lee Jarvis, Alice Minium, Theressa N. Weller, *aka* Éilís Weller, Roberto Roldan, Andrew Ringle and Eduardo Acevedo (collectively, "Plaintiffs"), by counsel, pursuant to Court's Order entered January 23, 2023 (ECF 230) to file a Reply Statement of Position, state as follows:

**A**. **At the times of each of the several events described as protests in the Second Amended Complaint and the memoranda, were permits required for the events and, if so, were permits were obtained; and what were the effect on plaintiffs' claims of (a) the fact that the event was held pursuant to a permit; or (b) the fact that the event occurred without a required permit.**

Plaintiffs and the City agree that each of the events described in the Second Amended Complaint fall into one of four categories: (a) a spontaneous event for which no permit was necessary; (b) the event occurred on private property; (c) the Plaintiff involved was not participating in the event but rather was a member of the press covering it; and (d) was a solitary incident and not a protest or demonstration event. With regard to any event depicted as a protest

or demonstration, the Plaintiffs are unaware if any permits were applied for or obtained, and the issue of permits does not affect the validity of the claims presented in this case.

B.  **What is the applicable law by which to measure whether each plaintiff may be considered as a member of the press?**

Plaintiffs and the City agree that members of the press are not limited to individuals who work for newspapers and periodicals. Instead, the First Amendment's protection of the freedom of the press extends "from the lonely pamphleteer who uses carbon paper of a mimeograph" to "the large metropolitan publisher who utilizes the latest photocomposition methods." Branzburg v. Hayes, 408 U.S. 665, 704 (1972). Thus, the press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." Id. (quoting Lovell v. Griffin, 303 U. S. 444, 303 U. S. 450, 303 U. S. 452).

C.  **What is the applicable law addressing: (a) the obligations of members of the press to obey the instructions of law enforcement officers who are dealing with the specific events alleged in the Second Amended Complaint; and (b) the extent to which a member of the press can be considered to assume the risk of actions taken by law enforcement officers when those officers are dealing with the events (event by event) alleged in the Second Amended Complaint**.

Here, again, Plaintiffs and the City agree that journalists covering protests have the same rights as members of the public to observe, photograph and record in public places and that they are obliged to follow the same laws and lawful police orders as anyone else. Plaintiffs and the City likewise agree that Executive Order 64 ("EO64"), which imposed a curfew on the City of Richmond from 8:00 p.m. to 6:00 a.m., did not apply to members of the press.

However, the City alleges that there are instances alleged in the Second Amended Complaint where Plaintiffs had encounters with RPD officers after an unlawful assembly was declared, and that nothing in EO64 permitted a member of the press to disregard an unlawful assembly declaration. Specifically, the City notes that Plaintiff Eduardo Acevedo's allegations

2

occurred within the context of an unlawful assembly and, therefore, he was required to disperse like any other individual. What the City fails to note, however, is that none of the Plaintiffs were disregarding an unlawful assembly declaration during any of the events alleged in the Second Amended Complaint.

Pursuant to § 18.2-406 of the Code of Virginia, "[w]henever three or more persons assembled share the common intent to advance some lawful or unlawful purpose by the commission of an act or acts of unlawful force or violence likely to jeopardize seriously public safety, peace or order, and the assembly actually tends to inspire persons of ordinary courage with well-grounded fear of serious and immediate breaches of public safety, peace or order, then such assembly is an unlawful assembly."

With respect to Plaintiff Eduardo Acevedo's allegations, the Second Amended Complaint clearly states that on July 25, 20202, "shortly after 11:00 p.m." the demonstration outside of the Richmond Police Headquarters was declared an "unlawful assembly." Sec. Am. Compl. ¶ 192. Thereafter, "[a]bout 10 minutes later, Richmond Police lobbied a flash-bang grenade into the middle of a parking lot across from the police station where members of the media were gathered to the side of the protestors." Id. at ¶ 193. Moreover, after he was initially tear gassed, Acevedo, along with another journalist, then "ran to *another* parking lot, where the RTD Reporter helped Acevedo around the corner of a building and began pouring milk in his eyes to help him recover from the gas." Id. at ¶ 196 (emphasis added). There, "at least five or more Richmond Police officers came around the corner of the building and suddenly moved in to restrain the two journalists" and "Acevedo and the RTD Reporter were swarmed by multiple RPD officers despite loudly screaming that they were press." Id. at ¶¶ 197-98. After one officer threw the RPD Reporter up against the wall, "[o]ther unknown Richmond Police officers grabbed Acevedo, pulled his hands behind his

back, and pushed him face down into the ground, despite his shouts identifying himself as a journalist." Id. at ¶¶ 199-200. Further, the photographs contained in the Second Amended Complaint clearly demonstrate that Acevedo was not part of a large or unruly crowd when he was swarmed by police. Accordingly, there is nothing to suggest that Acevedo was "disregarding" the unlawful assembly declaration at the time of the injuries he complains of in the Second Amended Complaint. In fact, Acevedo was clearly complying with police orders by dispersing from outside of Richmond Police Headquarters, moving across the street to a separate parking lot to gather with other members of the press, and then moving to a *second* separate parking lot with a fellow reporter when he was swarmed by multiple RPD officers. He was not actively participating in the demonstration when he was attacked by RPD officers, was clearly cooperating with police orders to disperse, and certainly did nothing to "assume the risk" of being assaulted by the police during the event.

As to Plaintiff Kristopher Goad, the Second Amended Complaint alleges that, "[o]n the night of July 26, 2020, Richmond Police Department declared Monroe Park closed and that all those in the park would be arrested…for trespass or unlawful assembly." Id. at ¶ 220. Goad was not in Monroe Park on the night of July 26, 2020, however, and was instead on the steps of the Sacred Heart Cathedral across the street. Id. at ¶ 221. Further, Goad "intentionally avoided Monroe Park because of Richmond Police Department's closure of the same." Id. at ¶ 222. Despite Goad's unequivocal compliance with police orders, "[a]round 10:20 p.m., approximately 10 or more Richmond Police officers left Monroe Park, crossed Franklin Street and made a beeline towards Goad, who was filming them from the Sacred Heart steps." Id. ¶ 223. Thereafter, while on the church steps, Goad was ambushed and tackled to the ground by two RPD officers before being arrested without probable cause. Id. at ¶¶ 224-25. There is nothing to suggest that Goad was

disregarding a declaration of unlawful assembly at the time of the injuries complained of. Instead, the allegations clearly demonstrate that Goad went out of his way to ensure that he was in compliance with police orders on July 26, 2020.

Also on July 26, 2020, Plaintiff Andrew Ringle was reporting on a demonstration in Monroe Park. Id. at ¶ 176. When Richmond Police officers arrived and "announced that everyone must leave," Ringle and another student reporter "quickly started walking toward the edge of Monroe Park in order to follow the officers' orders." Id. at ¶¶ 177-78. As Ringle was dispersing, he and the other reporter were "rushed by unknown Richmond Police officers" and was "grabbed an handcuffed before he could make it outside of the park, which is where he was trying to go." Id. at ¶ 179. When the officer informed Ringle that he was being detained, Ringle advised that he was present as a reporter and not to protest. Id. at ¶ 180. Once the officer was satisfied with Ringle's press credentials, "they released Ringle on the condition that he leave Monroe Park and not return that night." Id. at ¶ 181. Ringle complied with these instructions. Accordingly, at all relevant times, Ringle was not part of an unruly or destructive crowd and was actively in the process of complying with RPD orders. Ringle did not "disregard" any unlawful assembly order, and instead was rapidly dispensing from Monroe Park at the time that he was confronted and detained by police.

With respect to Plaintiff Jimmie Lee Jarvis, the Second Amended Complaint clearly notes that, on July 25, 2020, Jarvis was "standing with journalists and media in the parking lot of 217 West Grace Street, a*way from the large parking lot that had become a rallying point for protesters.*" Id. at ¶ 288 (emphasis added). Despite the fact that Jarvis peacefully standing in a wholly separate parking lot, "Richmond Police officers began firing volleys of explosives and gas, and as Jarvis filmed, he was struck with a gas canister that had been launched like a projectile directly at him from only a few yards away." Id. at ¶ 289. As Plaintiff Acevedo was grabbed by

5

police officers, Jarvis stood filming the incident *on the sidewalk of Madison Street*, when another Richmond Police officer walked up, arms outstretched shouting "I'm right here! I'm right here," trying to instigate a confrontation. Id. at ¶ 292 (emphasis added). As Jarvis remained on the sidewalk filming, *yards away from Acevedo*, another Richmond Police officer pointed a strobe light at Jarvis to prevent his camera from capturing footage. Id. at ¶ 293 (emphasis added). Thus, at all relevant times, Jarvis was standing in a separate area, away from the main gathering point of protestors. He was not disregarding police orders or any declaration of unlawful assembly, yet despite this fact, he was continuously approached and harassed by RPD officers.

Finally, regarding Plaintiff Éilís Weller's allegations, the Second Amended Complaint notes that Weller was attending a peaceful protest in Scuffletown Park when they and others were approached by approximately fifteen or more RPD officers. While, upon information and belief, the protest was not declared an unlawful assembly, the police instructed the group to get on the sidewalk. Weller complied with police orders, but as a disabled individual, Weller had difficulty getting to the sidewalk quickly, especially in light of the several police vehicles that surrounded the group. Not less than two minutes later, Weller, while attempting get to the sidewalk and already complying with RPD orders, was forcibly dragged and toward the sidewalk by a RPD officer. Weller was thereafter arrested and was verbally advised that the charge was "illegal participation in a parade," but the charging part of their summons was intentionally blank and the charge code was Virginia Code § 46.2-928: "[w]alk in road – sidewalk available." Accordingly, the allegations clearly establish that Weller was not disregarding police orders at the time of their arrest. To the contrary, like the other Plaintiffs listed above, Weller was actively complying with police instruction and obeying police orders at the time of the injuries complained of. Despite this fact,

Weller was singled out and unlawfully seized by the RPD while peacefully and calmly exercising their First Amendment rights.

Dated:  March 6, 2023

                                  Respectfully submitted,

*/s/ Terry C. Frank, Esq.*
Terry C. Frank, Esq. (VSB No. 74890)
Terry Frank Law
108 E. Grace Street, Suite 001
Richmond, VA 23219
Phone: (804) 899.8090
Fax: (804) 899.8229
E-mail: terry@terryfranklaw.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of said filing to the following counsel of record:

>Wirt P. Marks, Esq. (VSB #36770)
>Senior Assistant City Attorney
>Zachary P. Grubaugh, Esq. (VSB #83944)
>Assistant City Attorney
>City Hall, Room 400
>900 East Broad Street
>Richmond, VA 23219
>wirt.marks@richmondgov.com
>Zachary.Grubaugh@rva.gov
>*Counsel for Defendant City of Richmond*

>*/s/ Terry C. Frank, Esq.*
>Terry C. Frank, Esq. (VSB No. 74890)
>Terry Frank Law
>108 E. Grace Street, Suite 001
>Richmond, VA 23219
>Phone: (804) 899.8090
>Fax: (804) 899.8229
>E-mail: terry@terryfranklaw.com
>*Counsel for Plaintiffs*

8