UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| **CHARLES H. SCHMIDT, JR.,** *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-404 |
| ) | |
| **CITY OF RICHMOND,** ) | |
| ) | |
| *Defendants.* ) | |
| _____ ) | |

**PLAINTIFFS' STATEMENT OF POSITION**

COME NOW the Plaintiffs, Charles H. Schmidt, Jr., Kristopher C. Goad, Greyson Goodenow, *aka* Vanna Goodenow, Jimmie Lee Jarvis, Alice Minium, Theressa N. Weller, *aka* Éilís Weller, Roberto Roldan, Andrew Ringle and Eduardo Acevedo (collectively, "Plaintiffs"), by counsel, pursuant to the Court's Order entered March 6, 2023 (ECF 239) to file a Statement of Position wherein the parties are to assume[1] that some sort of severance has been found to be appropriate and that some grouping of cases has been found to be appropriate, state as follows:

**A.      Summary of Claims**

The Plaintiffs commenced this § 1983 action on May 30, 2022 against the City of Richmond and approximately thirty officers and leadership of the Richmond Police Department [ECF No. 1]. The Second Amended Complaint, filed solely against the City of Richmond [ECF No. 218], includes claims for violations of the First Amendment (Count I) and Fourth Amendment, alleging the use of excessive force (Count II) and unlawful search and seizure (Count III). Each of the nine (9) Plaintiffs alleges damages as a result of First and Fourth Amendment violations.

---

[1] Per the Court, no decision on these issues has been made.

The Plaintiffs' claims against the City are premised on allegations that there was a custom and practice of constitutional violations so widespread that the City's failure to act was evidence of deliberate indifference to the rights of the citizens it polices; and that the City failed to properly train its police force and failed to properly investigate complaints of alleged constitutional violations. The Plaintiffs are seeking compensatory damages, injunctive and declaratory relief and attorneys' fees.

## B. Proposed Groupings for Trial

Plaintiffs and the City agree that members of the press are not limited to individuals who work for newspapers and periodicals. Instead, the First Amendment's protection of the freedom of the press extends "from the lonely pamphleteer who uses carbon paper of a mimeograph" to "the large metropolitan publisher who utilizes the latest photocomposition methods." Branzburg v. Hayes, 408 U.S. 665, 704 (1972). Moreover, the press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." Id. (quoting Lovell v. Griffin, 303 U. S. 444, 303 U. S. 450, 303 U. S. 452). Further, "[w]ith the advent of the Internet and the decline of print and broadcast media, moreover, the line between the media and others who wish to comment on political and social issues becomes far more blurred." Citizens United v. Fed. Election Comm'n, 130 S. Ct. 876, 905–06 (2010).

Here, Plaintiffs Roldan, Ringle, and Acevedo were credentialed members of the press at the times of the injuries raised in the Second Amended Complaint. Journalists covering protests have the same rights as members of the public to observe, photograph and record in public places. Because the factual and legal issues giving rise to all of the Plaintiffs' claims alleging violations of their First and Fourth Amendments rights against the City in this case are substantially similar, grouping for trial into a "press" grouping and a "non-press" would proceed in a similar, if not

identical, manner. Additionally, both the press and non-press Plaintiffs intend to establish liability against the City in three separate ways: (i) custom and practice; (ii) failure to train; and (iii) failure to investigate, and because there is significant overlap on these issues for all of the Plaintiffs, they will necessarily invoke overlapping witnesses and evidence. "Neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Jordan by Jordan v. Jackson, 15 F.3d 333, (4th Cir. 1994). In order to establish their claims, the Plaintiffs must put on evidence of a **pattern** of constitutional violations. Thus, each Plaintiff will necessarily need to rely on the testimony of their fellow Plaintiffs (and others similarly situated) in order to prove the requisite pattern or custom, which will require the "press" Plaintiffs to participate in the "non-press" Plaintiffs' trials, and vice versa.

**C.     Criteria for Proposed Groupings**

In light of the foregoing, should the Court group the Plaintiffs into "press" and "non-press" for trial, the Plaintiffs propose that the following criteria be used to group the Plaintiffs' claims.

*1.     Group 1 - Members of the Press (Plaintiffs Roldan, Ringle, and Acevedo)*

Plaintiff Roberto Roldan is a veteran journalist[2] and currently covers city politics and government for Louisville Public Media outlet WFPL. His reporting focuses on public policy, policing, community initiatives and government accountability issues facing Louisville, Kentucky. Before joining WFPL, Roldan covered Richmond City Hall for Virginia Public Media ("VPM"), where he was employed at the time he was tear-gassed and physically assaulted by Richmond Police officers in 2020. Plaintiffs Andrew Ringle (executive editor) and Eduardo Acevedo (news

---

[2] Roldan is a two-time Fulbright Scholarship recipient with a master's degree in international relations and affairs and a bachelor's degree in journalism/minor in international affairs.

3

editor) were reporting as student journalists for VCU's Commonwealth Times at the time of the injuries alleged in the Second Amended Complaint.

Each of the journalist Plaintiffs were tear-gassed, pepper-sprayed, detained without probable cause, threatened or physically assaulted by one or more officers, agents or employees of the Richmond Police Department, despite clearly and repeatedly identifying themselves as members of the press and while otherwise engaging in their reporting duties. Thus, Roldan, Ringle, and Acevedo (along with a number of other journalists) would present evidence related to each of their claims of constitutional harms and damages suffered at the hands of the Richmond Police Department as a result of their attempts to film or record police activity while reporting on the events for their respective news organizations.

While the First Amendment makes no distinction between members and non-members of the press, if required to identify criteria to make such a distinction (aside from their self-identifying as "press"), the Virginia Code provides guidance and includes definitions of matters related to journalism for varying reasons. Virginia Code § 23.1-401.2 defines "student journalist" as follows: "a student enrolled at a public institution of higher education who gathers, compiles, writes, edits, photographs, records, or prepares information for inclusion in institution-sponsored student media."

Virginia Code § 19.2-271.5, addressing the threshold required to compel evidence from a reporter in criminal case, includes the following definitions:

> "Journalism" means the gathering, preparing, collecting, photographing, recording, writing, editing, reporting, or publishing of news or information that concerns local, national, or international events or other matters of public interest for dissemination to the public.
>
> "News organization" means any (i) newspaper or magazine issued at regular intervals and having a general circulation; (ii) recognized press association or wire service; (iii) licensed radio or television station that engages in journalism; or (iv)

4

business that, by means of photographic or electronic media, engages in journalism and employs an editor overseeing the journalism function that follows commonly accepted journalistic practice as evidenced by (a) membership in a state-based journalism organization, including the Virginia Press Association and the Virginia Association of Broadcasters; (b) membership in a national journalism organization, including the National Press Club, the Society of Professional Journalists, and the Online News Association; (c) membership in a statewide or national wire news service, including the Capital News Service, The Associated Press, and Reuters; or (d) its continuous operation since 1994 or earlier.

"Newsperson" means any person who, for a substantial portion of his livelihood or for substantial financial gain, engages in journalism for a news organization. "Newsperson" includes any person supervising or assisting another person in engaging in journalism for a news organization.

Any Plaintiff who fit one of the above definitions, in this case Roldan, Ringle and Acevedo, would fit the criteria of "press" for purposes of grouping for trial.

2. *Group 2 - All other Plaintiffs (Plaintiffs Schmidt, Goad, Goodenow, Jarvis, Minium, and Weller)*

The remaining Plaintiffs – Schmidt, Goad, Goodenow, Jarvis, Minium, and Weller – while observing, recording, and in some instances reporting on the events on social media, were not working for news publications at the time of the injuries raised in the Second Amended Complaint. However, as noted above, their claims against the City of Richmond are substantially similar to those of the "press" Plaintiffs, as they are based on and arise from substantially the same conduct—the ongoing and repeated unlawful actions of RPD officers who routinely retaliate against civilians and members of the press who criticize, observe, or record police activity.

As with the "press" Plaintiffs, each of the "non-press" Plaintiffs were tear-gassed, pepper-sprayed, detained without probable cause, threatened or physically assaulted by one or more officers, agents or employees of the Richmond Police Department due to their observation and/or recording of police activity. Thus, Schmidt, Goad, Goodenow, Jarvis, Minium, and Weller would present evidence related to each of their claims of constitutional harms and damages suffered at

the hands of the Richmond Police Department as a result of their criticism, observation, and/or documentation of police activity.

      3.    *Evidence common to both groupings*

In this case, all of the Plaintiffs seek redress against the City of Richmond stemming from the actions of the Richmond Police Department and its officers' repeated violations of Plaintiffs' First Amendment and Fourth Amendment rights. Indeed, Plaintiffs have alleged the same legal claims and rely largely on the same facts to prove those claims. Accordingly, for both the "press" and "non-press" Plaintiffs, Plaintiffs will present evidence, in addition to the Plaintiffs' claims, of the Richmond Police Department's custom and practices of retaliating against other members of the press and public for recording of police activity from other similarly situated individuals who have alleged they have suffered similar constitutional harms from Richmond Police Department. Additionally, both the "press" and "non-press" Plaintiffs will present evidence regarding the relevant policies and procedures of the Richmond Police Department and the policy making officials responsible; evidence regarding the relevant training, or lack thereof, provided to Richmond police officers; and evidence of the City's actual or constructive notice of alleged harm to constitutional rights of citizens. As such, Plaintiffs from both groupings would present testimony from many of the same witnesses at trial.

Dated: March 10, 2023

                                          Respectfully submitted,

                                          */s/ Terry C. Frank, Esq.*
                                          Terry C. Frank, Esq. (VSB No. 74890)
                                          Terry Frank Law
                                          6722 Patterson Ave., Ste. B
                                          Richmond, VA 23226
                                          Phone: (804) 899.8090
                                          Fax: (804) 899.8229
                                          E-mail: terry@terryfranklaw.com
                                          *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of said filing to the following counsel of record:

>Wirt P. Marks, Esq. (VSB #36770)
>Senior Assistant City Attorney
>Zachary P. Grubaugh, Esq. (VSB #83944)
>Assistant City Attorney
>City Hall, Room 400
>900 East Broad Street
>Richmond, VA 23219
>wirt.marks@richmondgov.com
>Zachary.Grubaugh@rva.gov
>*Counsel for Defendant City of Richmond*

>*/s/ Terry C. Frank, Esq.*
>Terry C. Frank, Esq. (VSB No. 74890)
>Terry Frank Law
>6722 Patterson Ave., Ste. B
>Richmond, VA 23226
>Phone: (804) 899.8090
>Fax: (804) 899.8229
>E-mail: terry@terryfranklaw.com
>*Counsel for Plaintiffs*